COURT OF APPEALS









COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS

 

 




 
 
  
 SCOTT ROBERT LEGGETT,
  
                            
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                             Appellee.
 
 
  
 '
  
 '
  
 '
  
 '
  
 '
 
 
  
 No. 08-01-00015-CR
  
 Appeal from the
  
 County
 Criminal Court No. 7
  
 of Dallas
 County, Texas
  
 (TC#
 MB99-34395-H)
 
 




 

 

O P I N I O N

 

This is an appeal from a conviction
for the offense of driving while intoxicated. 
Trial was to the court upon a plea of not guilty to the offense, and the
court assessed the punishment at 180 days= confinement in the Dallas County
Jail probated for two (2) years and a fine of $600.  We affirm the judgment of the trial court. 

I.  SUMMARY OF THE EVIDENCE








At trial, the State offered the
testimony of Officer Timothy Cassout who was employed
by the Irving Police Department.  Cassout testified that while on duty on December 11, 1999
shortly after 1 a.m., he observed Appellant driving his vehicle on the inside
lane and swerved over towards the middle lane with both passenger side tires
crossing over the lane.  He then made an
abrupt, jerking lane change back into his original inside lane.  Cassout continued
to follow Appellant and Appellant kept weaving from line to line inside the
lane.  From these observations, Cassout inferred three things:  Appellant could have car problems, a
distraction in the vehicle, or he could be intoxicated.  Cassout initiated a
traffic stop.  According to Cassout=s testimony, there was a Amoderate@ odor of alcohol from inside the
vehicle and the Appellant had Abloodshot@eyes.  Cassout then asked Appellant for his driver=s license but he produced a credit
card instead.  When Appellant corrected
the problem, Cassout conducted sobriety tests.  Cassout concluded
that Appellant was intoxicated and placed him under arrest. Cassout
also testified that he pulled Appellant over on a sloped terrain and the
weather was windy.  Additionally, there
was not much traffic when Appellant was pulled over and that, in fact, the
officer=s vehicle was the only vehicle on the
highway.  Appellant=s condition was orderly and his
speech was not slurred. 

Torrie Hollis, witness for Appellant,
testified that she was a passenger in Appellant=s vehicle when he was pulled
over.  Hollis met with Appellant earlier
that evening and spent the evening with him 
According to Hollis, Appellant had five drinks over the course of a
six-hour evening, which included dinner and dancing.  Hollis also said that Appellant showed no
signs of intoxication, such as stepping on her feet or speeding when he was
driving.  She did not notice Appellant
weave or drive unsafely.  Hollis related
that the painted traffic lanes at that stretch of road were faded and were
difficult to see.  








II.  DISCUSSION

In his sole issue, Appellant asserts
that the trial court erred in failing to grant his motion to suppress the
evidence in that the facts do not support that the stop by the officer was
reasonable. 

In reviewing a trial court's ruling,
an appellate court must first determine the applicable standard of review.  The amount of deference a reviewing court
affords to a trial court's ruling on a mixed question of law and fact often is
determined by which judicial actor is in a better position to decide the issue.  See Guzman v. State, 955 S.W.2d
85, 87 (Tex. Crim. App. 1997). If the issue involves
the credibility of a witness, thereby making the evaluation of that witness's
demeanor important, compelling reasons exist for allowing the trial court to
apply the law to the facts.  See id.  In other situations, if the issue is whether
an officer had probable cause to seize a suspect under the totality of the
circumstances, the trial judge is not in an appreciably better position than
the reviewing court to make that determination. 
See id.  Therefore,
although due weight should be given to the inferences drawn by trial judges and
law enforcement officers, determinations of reasonable suspicion and probable
cause should be reviewed de novo on appeal. 
See id.








In a hearing on a motion to suppress,
the trial judge is the sole trier of fact, and he or
she may choose to believe or disbelieve any or all of the witnesses'
testimony.  See Romero v. State,
800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  Under Guzman, we must give great
deference to the trial court's ruling to the extent that it involved an
evaluation of the credibility of witnesses or an evaluation of their
demeanor.  Because the trial court
overruled Appellant's motion to suppress, we will presume that the judge found
the police officer's testimony credible. 
However, we will review the issue of "reasonable suspicion" de
novo.  See Guzman, 955 S.W.2d at
87.

The reasonableness of a temporary
detention must be examined in terms of the totality of the circumstances and
will be justified when the detaining officer has specific articulable
facts, which taken together with rational inferences from those facts, lead him
or her to conclude that the person detained actually is, has been, or soon will
be engaged in criminal activity.  Woods
v. State, 956 S.W.2d 33, 38‑39 (Tex. Crim.
App. 1997).  When a detention is based
upon conduct by the suspect, the conduct need not itself be unlawful or in some
sense inconsistent with innocence. 
Innocent behavior will frequently provide the basis for a showing of
probable cause or reasonable suspicion and in making a determination of
probable cause or reasonable suspicion, the relevant inquiry is not whether
particular conduct is innocent or criminal, but the degree of suspicion that
attaches to particular types of noncriminal
acts.  Id. at 38.  Also, objective facts, meaningless to the
untrained, when used by trained law enforcement officers can be combined with
permissible deductions from such facts to form a legitimate basis for suspicion
of a particular person.  Id. at 37‑38.








Appellant maintains that because
there were no other cars save Cassout=s police vehicle on the road that
morning, there was nothing to indicate that Appellant=s actions were unsafe or that anyone
was placed in danger.  Further, Appellant
asserts that the testimony concerning the faded lane lines indicated that it
was impossible to commit the offense.[1]  Therefore, there was no reasonable basis for
stopping Appellant=s vehicle.  In support
of his argument, Appellant cites Hernandez v. State 983 S.W.2d
867 (Tex. App.--Austin 1998, pet. ref=d) and State v. Tarvin 972 S.W2d 910 (Tex. App.--Waco 1998, pet ref=d). 
The reasoning of these cases, however, does not support Appellant=s argument.  The decision in Hernandez rested
heavily on the officer=s testimony that he was concerned only about the driver=s Awell being@ not whether he believed the driver
was intoxicated.  Hernandez, 983
S.W.2d at 870.  In Tarvin,
the court noted that the officer never testified that he was conducting an
investigatory stop, or whether there were other infractions, or any other
suspicious activity that would justify a stop. Tarvin,
972 S.W.2d at 912.  Moreover, Appellant
erroneously relies on Ehrhart v.
State, 9 S.W.3d 929, 930 (Tex. App.--Beaumont 2000, not pet.) because in
that case there was no evidence by either officer that the driving was made
unsafe.  Here, Officer Cassout testified that Appellant made an abrupt jerk back
into his own lane after weaving into another. 
He was then seen to weave back and forth within his lane.  In Gajewski
v. State, 944 S.W.2d 450, 453 (Tex. App.--Houston 14th Dist. 1997, no
pet.), the court held:








We decline to interpret section 545.060 so as to
permit a driver to weave throughout all lanes of traffic so long as no other
vehicles are in the immediate vicinity . . . . 
The fact that no other cars were around appellant at the time he was
weaving may be a defense to a traffic citation. 
However, it does not negate a stop based on reasonable suspicion that
the driver of the motor vehicle has lost control of his mental and physical
faculties by the ingesting of alcohol and/or drugs.  Traffic laws are designed to protect not only
the safety of other persons in other vehicles, but also the safety of the
driver in question.  

 

Id. at 453.

 

In the present case, the fact that no
other cars were around and there was testimony that the lane lines were faded
may be a defense to a traffic citation, however, these factors do not nullify a
reasonable suspicion the driver of the vehicle has lost control of his mental
and physical faculties due to the ingesting of alcohol or drugs.  We do not agree with Appellant that crossing
a dividing lane with both right wheels, abruptly jerking the vehicle back into
the lane and then weaving within that lane is indicative of safe operation of
the vehicle.  Accordingly, we overrule
Appellant=s sole issue on appeal.  

Having overruled Appellant=s sole issue on appeal, we affirm the
judgment of the trial court.

August
26, 2002

 

 

 

                                                                                    RICHARD
BARAJAS, Chief Justice

 

 

Before
Panel No. 2

Barajas,
C.J., McClure, and Chew, JJ.

 

(Do
Not Publish)











[1]  Tex. Transp. Code
Ann. ' 545.060 (Vernon 1999).  Driving on Roadway Laned
for Traffic, provides:

 

(a) An operator on a roadway divided into two or more
clearly marked lanes for traffic:

(1) shall drive as nearly as practical entirely within
a single lane; and 

(2) may not
move from the lane unless that movement can be made safely.