11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Aric Danyl White

Appellant

Vs.                   No.
11-03-00026-CR -- Appeal from Collin County

State of Texas

Appellee

 

After
the trial court denied his motion to suppress evidence, Aric
Danyl White pleaded guilty to the state jail felony
offense of possession of more than 4 ounces but less than 5 pounds of
marihuana.  The trial court deferred the
adjudication of guilt and placed appellant on community supervision for 5
years.  The terms of his community
supervision required appellant to serve 120 hours of community service,
complete the substance abuse felony program, and obtain his college degree
within 6 months of his release from the substance abuse felony program.  We affirm.

In
his three issues on appeal, appellant argues that the trial court erred in
denying his motion to suppress evidence because:  (1) the officer had no reasonable suspicion
to stop appellant=s
vehicle; (2) the officer was not engaged in the community caretaking function
when he stopped appellant; and (3) the officer had no probable cause to detain
appellant once the officer determined that he was not going to arrest appellant
on unconfirmed warrants.  The State
contends that it is not relying on the community caretaking exception;
therefore, we need not address that as a reason for the officer stopping
appellant.  

                                                               Standard
of Review








We
review a trial court=s
denial of a motion to suppress for abuse of discretion.  Oles v.
State, 993 S.W.2d 103, 106 (Tex.Cr.App.1999).  In reviewing a trial court=s ruling on a motion to suppress,
appellate courts must give great deference to the trial court=s findings of historical fact as long
as the record supports the findings.  Guzman
v. State, 955 S.W.2d 85 (Tex.Cr.App.1997). 
We must afford the same amount of deference to the trial court=s rulings on Amixed
questions of law and fact,@
such as the issue of probable cause, if the resolution of those ultimate questions
turns on an evaluation of credibility and demeanor.  Guzman v. State, supra at
89.  Appellate courts, however, review de
novo Amixed
questions of law and fact@
not falling within the previous category. 
Guzman v. State, supra.  When
faced with a mixed question of law and fact, the critical question under Guzman
is whether the ruling Aturns@ on an evaluation of credibility and
demeanor.  Loserth
v. State, 963 S.W.2d 770, 773 (Tex.Cr.App.1998).  A question Aturns@ on an evaluation of credibility and
demeanor when the testimony of one or more witnesses, if believed, is always
enough to add up to what is needed to decide the substantive issue.  Loserth
v. State, supra.  We must view the
record in the light most favorable to the trial court=s
ruling and sustain the trial court=s
ruling if it is reasonably correct on any theory of law applicable to the
case.  Guzman v. State, supra.  

                                                    Reasonable
Suspicion for the Stop

A
routine traffic stop closely resembles an investigative detention.  Berkemer
v. McCarty, 468 U.S. 420 (1984).  Law
enforcement officers may stop and briefly detain a person for investigative
purposes on less information than would be required to support a probable cause
determination.  Terry v. Ohio, 392
U.S. 1, 21-22 (1968).  The reasonableness
of a temporary detention must be examined in terms of the totality of the
circumstances and will be justified when the detaining officer has specific articulable facts which, taken together with rational inferences
from those facts, lead the officer to conclude that the person detained
actually is, has been, or soon will be engaged in criminal activity.  Woods v. State, 956 S.W.2d 33, 38
(Tex.Cr.App.1997).  

The
only witness at the hearing on appellant=s
motion to suppress, Sergeant Investigator Andrew Hawkes
with the Collin County Sheriff=s
Office, testified that when he stopped appellant he was in a marked patrol
vehicle.  Sergeant Hawkes
stopped appellant on U.S. Highway 75 northbound near the Foster Crossing Exit
in Collin County.  Sergeant Hawkes said:

I
observed the vehicle crossing over the B
both solid white lines on the right side and the center dividing lines and
traveling at a decreased speed for the speed limit there.

 

Sergeant
Hawkes testified that appellant was traveling at
45-50 miles per hour in a 60 mile per hour zone.  Sergeant Hawkes
also stated that he had been a certified peace officer for 102 
years and that he had observed A[t]housands of cars on that highway.@








Much
of appellant=s
argument concentrates on the portion of the stop that was recorded by the
camera in Sergeant Hawkes=s
vehicle.  However, Sergeant Hawkes said early in his testimony: 

The
initial reason for the stop probably wasn=t on [the film], but as soon as I had
probable cause then I activated my camera.[1]

 

Sergeant
Hawkes testified that he stopped appellant for Afailing to maintain a single lane and
driving on the shoulder.@  Citing Bass v. State, 64 S.W.3d 646,
648 (Tex.App. - Texarkana 2001, pet=n ref=d),
State v. Cerny, 28 S.W.3d 796, 800 (Tex.App. - Corpus Christi 2000, no pet=n), and Hernandez v. State, 983
S.W.2d 867, 871 (Tex.App. B
Austin 1998, pet=n ref=d), appellant argues that his failure
to drive within a single lane did not constitute a violation of TEX. TRANSP.
CODE ANN. '
545.060(a) (Vernon 1999) because there was no evidence that his driving was
unsafe.  Section 545.060(a) requires an
operator on a roadway divided into two or more clearly-marked lanes for traffic
to (1) drive, as nearly as practical, entirely within a single lane and (2) not
move from the lane unless that movement can be made safely.

The
court in Bass held that the State had not presented evidence that Bass=s one lane change occurred in an unsafe
manner; the court noted that the officer did not testify that, based on his
experience, he subjectively suspected Bass of being intoxicated.   Hernandez involved a police officer
stopping the driver after observing him swerve once 18 to 24 inches from the
right lane into the adjacent left lane of traffic going the same
direction.  The swerve in question was
characterized as a slow drift over and back and was not a problem for any other
vehicle.  The court in Cerny affirmed the trial court=s granting of the motion to suppress,
expressly deferring to the trial court=s
determination of the historical facts concerning the driver=s actions.  

As
in Cerny, we believe that the trial court was
in a better position to determine the credibility and demeanor of Sergeant Hawkes, and we must defer to the trial court=s determination of the historical facts
concerning the stop of appellant.  Guzman
v. State, supra at 87.  As to whether
there was anything unsafe about appellant=s
weaving, Sergeant Hawkes testified:

Sure
there was.  He wasn=t maintaining a single lane and in a
police officer=s
standpoint, that=s not
safe.  From my standpoint that=s not safe.

 








Sergeant Hawkes
said that he was concerned about appellant=s
driving:

 

If
he was falling asleep, if he was intoxicated, if he was eating a hamburger and
it was falling in his lap and he wasn=t paying attention.

 

The tape reflected that, after
the stop, Sergeant Hawkes asked appellant:

 

Have you had any
alcohol to drink?  You were weaving on
the road, that=s why I
stopped you.

 

Sergeant
Hawkes did not recall how many times that appellant
crossed over the center stripe between the two lanes.  Appellant points out that, during
cross-examination, Sergeant Hawkes conceded that he
did not think that appellant was intoxicated; however, Sergeant Hawkes apparently based this statement on his observations
of appellant after the stop.

The
court in Cook v. State, 63 S.W.3d 924, 928-31 (Tex.App.
- Houston [14th Dist.] 2002, pet=n
ref=d), considered a motion to suppress
similar to the one before us.  There, the
court held that the officer was justified in stopping the defendant based on a
reasonable suspicion that he was in violation of Section 545.060(a); the
officer was also justified in stopping appellant based on a reasonable
suspicion that appellant was driving while intoxicated.  We agree with 
Cook that Section 545.060(a) does not permit a driver to weave
across lanes of traffic so long as no other vehicles are in the vicinity.  Id. at 928; Gajewski
v. State, 944 S.W.2d 450, 453 (Tex.App. B Houston [14th Dist.] 1997, no pet=n). 
Weaving can be unsafe even if the driver does not come close to hitting
another car while the officer is observing the driver.  U.S. Highway 75 is a major highway connecting
Dallas and Tulsa, and the video showed a number of cars passing the scene of
the stop.  The trial court believed
Sergeant Hawkes=s
testimony that appellant=s
weaving was unsafe, and we defer to that finding.  

We
find that, based on the totality of Sergeant Hawkes=s testimony as to the facts and the
rational inferences to be drawn from those facts, appellant=s driving behavior was sufficient to
justify the officer in stopping appellant based on a reasonable suspicion that
he was in violation of Section 545.060(a) and to raise a reasonable suspicion
in the mind of a reasonable police officer that appellant was driving while
intoxicated.  Appellant=s first issue is overruled.

                                                      The
Detention Was Reasonable

Although
appellant agreed that he consented to Sergeant 
Hawkes=s
request to search his car, appellant contends in his third issue that, even if
the detention was appropriate, the purpose of the detention ended when Sergeant
Hawkes made the determination that he was not going
to arrest appellant on unconfirmed warrants. 
Therefore, according to appellant, he should have been released, and no
subsequent search should have taken place.

Under
Terry v. Ohio, supra, an investigative detention is reasonable if the
officer=s action
was justified at its inception and was reasonable related in scope to the
circumstances that justified the detention. 
Terry v. Ohio, supra at 19-20. 
Thus, a traffic stop must last no longer than is necessary to carry out
the purpose of the stop.  Florida v.
Royer, 460 U.S. 491, 500 (1983); Davis v. State, 947 S.W.2d 240, 245
(Tex.Cr.App.1997).  However, once the
purpose of the original detention has been effectuated, a continued detention
may be supported by some additional reasonable suspicion.  Davis v. State, supra at 244-45. 

The
detention lasted approximately 18 minutes before appellant consented to the
search.  Sergeant Hawkes
first asked appellant to step to the back of the car.  After asking to see appellant=s driver=s
license, Sergeant Hawkes then asked appellant where
he was going, and appellant replied that he had visited his mother in Dallas
and was heading back to Muskogee, Oklahoma. 
The passenger told Sergeant Hawkes that they
were going to Haskell, Oklahoma. 
Sergeant Hawkes then returned to his patrol
unit to run a routine driver=s
license and warrants check on appellant. 
The check showed that appellant had some outstanding warrants out of the
Dallas Police Department.  On the video,
Sergeant Hawkes said that he A[felt]
like he smells marihuana.@  Sergeant Hawkes
called for a back-up unit.  Although at
the hearing Sergeant Hawkes denied that he had
requested a canine unit as his backup, the trial court correctly remembered
that the video reflected that he had. 
Sergeant Hawkes asked appellant for consent to
search the car, and appellant gave his consent. 
The officers found an assault rifle with a collapsible stock in the
trunk and two pounds of marihuana, $11,100 in cash, and a .45 automatic handgun
under the backseat of appellant=s
car.  Appellant and his passenger were
arrested.








Officer
Hawkes testified that the conflicting answers of
appellant and his passenger and their behavior made him suspicious; the video
reflected that he thought he smelled marihuana. 
In Freeman v. State, 62 S.W.3d 883, 888 (Tex.App.
B Texarkana 2001, pet=n ref=d),
the court found that the  inconsistent
answers between driver and passenger along with the odor of marihuana justified
a continued detention.  Here, it is not
even clear that the purpose of the original detention had been effectuated by
Sergeant Hawkes when he asked appellant for consent
to search the vehicle.  Even if it had
been, Sergeant Hawkes did not have to have additional
reasonable suspicion to request a consent to search.  Ohio v. Robinette, 519 U.S. 33, 39-40
(1996); James v. State, 102 S.W.3d 162, 173 (Tex.App.
- Fort Worth 2003, pet=n
ref=d). 
Compare Davis v. State, supra, where the defendant twice refused
to give consent to search after the purpose of the detention had been
effectuated and the court held that a continued detention of the defendant
until the drug dogs arrived was unreasonable.

We
cannot say that the trial court abused its discretion in denying appellant=s motion to suppress.  Appellant=s
third issue is overruled.

                                                                This
Court=s Ruling

The
judgment of the trial court is affirmed.

 

TERRY McCALL

JUSTICE

 

February 19,
2004

Do not
publish.  See TEX.R.APP.P.
47.2(b).

Panel consists of:  Arnot, C.J., and

Wright, J., and McCall, J.











[1]During cross-examination, Sergeant Hawkes
again said that he turned his camera on after he observed Aprobable cause of a traffic violation.@